RAMIREZ-SMITH LAW
NIKKI R. SMITH, ISB: 9030
NSMITH@NRSDT.COM
NEAL F. DOUGHERTY, CSB: 302612
NDOUGHERTY@NRSDT.COM
TALIA D. BURNETT, CSB: 286318
TBURNETT@NRSDT.COM
CASEY PARSONS, ISB: 11323
CPARSONS@NRSDT.COM
JACOB ROURK, ISB: 12585
JROURK@NRSDT.COM
444 W. Iowa Ave.
Nampa, ID 83686
208-461-1883

*Attorneys for Petitioner*

UNITED STATES DISTRICT COURT
FEDERAL DISTRICT COURT OF IDAHO

| | |
|---|---|
| ORTEGA CASAREZ, Apolonio<br><br>　　　　　　　　　　Petitioner,<br><br>　　v.<br><br>**Jarrod Thompson,** Sheriff, Cassia County;<br>**Mike Hollinshead,** Sheriff, Elmore County;<br>**Kenneth Porter**, Director of Boise U.S. Immigration and Customs Enforcement Field Sub-Office;<br>**Jason Knight**, Director of the Salt Lake City U.S. Immigration and Customs Enforcement Field Office;<br>**Kristi Noem,** Secretary of the U.S. Department of Homeland Security; and<br>**Pam Bondi,** Attorney General of the United States, in their official capacities,<br><br>　　　　　　　　　　Respondents. | Case No. 1:25-cv-00596-REP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. 3

I.   Introduction ............................................................................................................... 6

II.  Statement of Facts .................................................................................................... 6

   a.  Procedural History ............................................................................................... 6

   b.  Notice to Respondents ......................................................................................... 7

III. Argument .................................................................................................................. 7

   a.  Petitioner satisfies all the factors required for a preliminary injunction............. 7

      i.   Petitioner is likely to succeed on the merits of his argument that he is detained under § 1226(a), not § 1225(b)(2)........................................................................ 7

      ii.  Petitioner will suffer irreparable harm absent an injunction........................ 12

      iii. The balance of hardships and public interest weigh heavily in Petitioner's favor.... 14

   b.  Prudential exhaustion is not required................................................................. 14

      i.   The Board's precedential in *Matter of Yajure-Hurtado* makes administrative exhaustion futile. ................................................................................................. 14

IV.  CONCLUSION ...................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

*CASES*

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ........................................................................................ 7

*Anicasio v. Kramer*,
   2025 No. 4:25-cv-03158-JFB-RCC; 2025 WL 2374224 (2025) ........................................ 12

*Arrazola-Gonzalez v. Noem*,
   2025 No. 5:25-cv-01789-ODW; 2025 WL 2379285 (DFMx 2025) ................................. 11

*Baird v. Bonta*,
   81 F.4th 1036 (9th Cir. 2023) ........................................................................................ 13

*Barton v. Barr*,
   590 U.S. 222 (2020) .................................................................................................... 8, 9

*Corley v. United States*,
   556 U.S. 303 (2009) ......................................................................................................... 9

*Diaz Martinez v. Hyde, , --- F. Supp.*,
   2025 WL 2084238 (D. Mass. July 24, 2025) ................................................................. 11

*Gomes v. Hyde*,
   2025 No. 1:25-CV-11571-JEK; 2025 WL 1869299 (2025) ............................................. 11

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) .................................................................................... 13, 14

*Hibbs v. Winn*,
   542 U.S. 88 (2004) ........................................................................................................... 9

*Jacinto v. Trump*,
   2025 No. 4:25-cv-03161-JFB-RCC; 2025 WL 2402271 (2025) ....................................... 12

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ....................................................................................................... 10

*Kostak v. Trump*,
   2025 No. 3:25-cv-01093-JE-KDM; 2025 WL 2472136 (2025) ....................................... 11

*Leal-Hernandez v. Noem*,
   2025 No. 1:25-cv-02428-JRR; 2025 WL 2430025 (2025) .................................................. 11

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ........................................................................................... 13

*Lopez Benitez v. Francis*,
   2025 No. 25 CIV. 5; 2025 WL 2371588 (DEH 2025) ......................................................... 11

*Lopez v. Heckler*,
   713 F.2d 1432 (9th Cir. 1983) ......................................................................................... 14

*Maldonado v. Olson*,
   2025 No. 0:25-cv-03142-SRN-SGE; 2025 WL 2374411 (2025) ....................................... 11

*Matter of Yajure Hurtado*,
   29 I. & N. Dec. 216 (BIA 2025) ................................................................................ 6, 9, 14

*McCarthy v. Madigan*,
   503 U.S. 140 (1992) ......................................................................................................... 14

*Nken v. Holder*,
   556 U.S. 418 (2009) ......................................................................................................... 14

No. CV-25-02157 .................................................................................................................. 11

*Palma Perez v. Berg*,
   No. 8:25CV494, 2025 WL 2531566 (D. Neb. Sept. 3, 2025) ........................................... 12

*PHX-DLR (CDB)*,
   2025 WL 2349133 (D. Ariz. Aug. 13, 2025) ................................................................... 11

*Pizarro Reyes v. Raycraft, -*,
   12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025) ....................................................... 12

*Ramirez Clavijo v. Kaiser*,
   2025 No. 25-CV-06248-BLF; 2025 WL 2419263 (2025) .................................................. 11

*Rodriguez v. Marin*,
   909 F.3d 252 (9th Cir. 2018) ........................................................................................... 13

*Romero v. Hyde*,
   No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025) .................................. 11

*Rosado v. Figueroa, (CDB)*,
   2025 WL 2337099 (D. Ariz. Aug. 11, 2025) .................................................................... 11

*Samb v. Joyce*,
 2025 No. 25 CIV. 6; 2025 WL 2398831 (DEH 2025) ............................................. 11

*Sampiao v. Hyde*,
 2025 No. 1:25-CV-11981-JEK; 2025 WL 2607924 (2025) .................................... 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
 559 U.S. 393 (2010) ................................................................................................ 9

*Shulman v. Kaplan*,
 58 F.4th 404 (9th Cir. 2023) .................................................................................... 9

*Vasquez Garcia v. Noem*,
 2025 No. 25-cv-02180-DMS-MM; 2025 WL 2549431 (2025) ............................. 12

*Washington v. Trump*,
 847 F.3d 1151 (9th Cir. 2017) ............................................................................... 13

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) ..................................................................................................... 7

*Zaragoza Mosqueda v. Noem*,
 2025 No. 5:25-CV-02304 CAS; 2025 WL 2591530 (2025) .................................. 12

***FEDERAL STATUTES***

8 U.S.C.
 § 1225 ............................................................................................................. 10, 11
 § 1226 ................................................................................................................. 7, 8

***OTHER AUTHORITIES***

Laken Riley Act (LRA), Pub. L. No. 119-1, 139 Stat. 3 (2025) ....................................... 8

## I. Introduction

Petitioner was detained On October 19, 2025 under Immigration and Customs Enforcement (ICE) authority, without possibility of bond redetermination pursuant to new Board of Immigration Appeals (BIA) precedent. *See Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025). To preserve the status quo, he seeks a stay barring his transportation out of the Court's jurisdiction, forbidding the Respondents from seeking his waiver of his rights in these proceedings and in removal proceedings outside the presence of his attorney, and preventing Respondents from taking any action to remove him from the United States.

## II. Statement of Facts

### a. Procedural History

Petitioner entered the United States without inspection over 20 years ago. He has two United States citizen children, one twelve years old, making him prima facie eligible for cancellation of removal. 8 U.S.C. § 1229a. On October 19, 2025, Petitioner was in attendance at a horse racing event in Wilder, Idaho, which was raided by hundreds of law enforcement officials, from various local, state, and Federal Agencies, including but not limited to Immigration and Customs Enforcement, who without any reasonable suspicion, detained and interrogated every person in attendance, separated them by birthplace, and then arrested and took into custody those who could not demonstrate United States citizenship. Petitioner, along with over 100 other persons who were enjoying the races, was determined to be born outside of the United States, could not satisfy the officers he had a right to remain in the United States, and was arrested for the purpose of effecting removal from the United States.

Petitioner remains in custody now in the Mini-Cassia Criminal Justice Center in Cassia County. He filed his Petition for Writ of Habeas Corpus with this Court on October 21, 2025.

b. Notice to Respondents

Within 24 hours of filing the petition, Counsel of record emailed Boise ICE informing them of the filing, and requesting that Petitioner not be moved during the pendency of these proceedings.

On October 27, 2025, Petitioner's counsel informed AUSA David Morse, Christine England, Boise ICE, and the Sheriff's Office of Cassia County via email that counsel would be imminently filing this Motion for a Temporary Restraining Order.

### III.     Argument

a. Petitioner satisfies all the factors required for a preliminary injunction.

To obtain a preliminary injunction, Petitioner must demonstrate that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Even if Petitioner raises only "serious questions going to the merits," the Court can nevertheless grant relief if the balance of hardships tips "sharply" in his favor, and the remaining equitable factors are satisfied. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

i. Petitioner is likely to succeed on the merits of his argument that he is detained under § 1226(a), not § 1225(b)(2).

Petitioner is likely to succeed on his claims that he is detained under 8 U.S.C. § 1226(a). He has been residing in the United States for years and has not sought admission. The text, context, and legislative and statutory history of the INA all demonstrate that § 1226(a) therefore governs his detention.

First, the plain text of § 1226 demonstrates that its subsection (a) applies to Petitioner. By its own terms, § 1226(a) applies to anyone who is detained "pending a decision on whether the

[noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226 goes on to explicitly confirm that this authority includes not just persons who are deportable, but also noncitizens who are inadmissible.[1] While § 1226(a) provides the right to seek release, § 1226(c) carves out specific categories of noncitizens from being released—including certain categories of inadmissible noncitizens—and subjects them instead to mandatory detention. *See, e.g.*, *id.* § 1226(c)(1)(A), (C). But if the Board of Immigration Appeals' binding precedent is correct—i.e., if § 1226(a) did not cover inadmissible noncitizens—there would be no reason to specify that § 1226(c) governs certain persons who are inadmissible; instead, it would have only needed to address people who are deportable for certain offenses.

Notably, recent amendments to § 1226 dramatically reinforce that this section covers people like Petitioner, whom DHS alleges to have entered without inspection. The Laken Riley Act added language to § 1226 that directly references people who have entered without inspection or who are present without authorization. *See* Laken Riley Act (LRA), Pub. L. No. 119-1, 139 Stat. 3 (2025). Specifically, pursuant to the LRA amendments, people charged as inadmissible pursuant to § 1182(a)(6) (the inadmissibility ground for entry without inspection) or (a)(7) (the inadmissibility ground for lacking valid documentation to enter the United States) *and* who have been arrested, charged with, or convicted of certain crimes are subject to § 1226(c)'s mandatory detention provisions. *See* 8 U.S.C. § 1226(c)(1)(E). By including such individuals under § 1226(c), Congress further clarified that, by default, § 1226(a) covers persons charged under § 1182(a)(6) or (a)(7). In other words, if someone is *only* charged as inadmissible under § 1182(a)(6) or (a)(7) and the additional crime-related provisions of § 1226(c)(1)(E) do not apply,

---

[1] Grounds of deportability apply to people who have been previously admitted to the United States, such as visa holders or permanent residents, while grounds of inadmissibility apply to those who have not beed admitted to the United States. See, e.g. *Barton*, 590 U.S. at 234.

then § 1226(a) governs that person's detention. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (observing that a statutory exception would be unnecessary if the statute at issue did not otherwise cover the excepted conduct).

In *Matter of Yajure Hurtado*, the Board suggests that any contradiction shown by Congress' amendment of 1226(c) is indicative not of any errors in its reasoning, but rather, of Congress' mistake. *See Yajure Hurtado* at 222 citing *Barton v. Barr*, 590 U.S. 222, 239 (2020) ("redundancies are common in statutory drafting — sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication," —"[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text").

Not only does this interpretation fly in the face of the plain text inclusion of inadmissible persons in section 1226(a), it also runs up against the canon against superfluities. Under this "most basic [of] interpretive canons, . . . '[a] statute should be construed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (third alteration in original) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see also Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023) ("[C]ourt[s] 'must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" (citation omitted)). But by concluding that the mandatory detention provision of § 1225(b)(2) applies to people like Petitioner, the Board of Immigration Appeals violates this rule. That is because if § 1225(b)(2) covers all people charged as inadmissible under § 1182(a)(6) or (a)(7) (and who are not in expedited removal), then §

1226(c)(1)(E) would be meaningless, as such people would already be subject to mandatory detention under § 1225(b)(2).

In sum § 1226's plain text demonstrates that § 1225(b)(2) should not be read to apply to everyone who is in the United States "who has not been admitted," 8 U.S.C. § 1225(a)(1). Section 1226(a) covers those who are not now seeking admission but instead are already residing in the United States—including those who are charged with inadmissibility—while § 1225(b)(2) covers only those "seeking admission," i.e., those who are apprehended upon arrival in the United States (and who are not subject to the procedures of § 1225(b)(1)). A contrary interpretation would ignore § 1226(a)'s plain text and structure and render meaningless § 1226's language that specifically addresses individuals who have entered without inspection.

The text of § 1225 reinforces this interpretation. As the Supreme Court has recognized, § 1225 is concerned "primarily [with those] seeking entry," [*Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018)] i.e. cases "at the Nation's borders and ports of entry, where the Government must determine whether a[noncitizen] seeking to enter the country is admissible," *id.* at 287. Paragraphs (b)(1) and (b)(2) in § 1225 reflect this understanding. To begin, paragraph (b)(1)—which concerns "expedited removal of inadmissible arriving [noncitizens]"—encompasses only the "inspection" of certain "arriving" noncitizens and other recent entrants the Attorney General designates, and only those who are "inadmissible under section 1182(a)(6)(C) or § 1182(a)(7)." 8 U.S.C. § 1225(b)(1), (A)(i). These grounds of inadmissibility are for those who misrepresent information to an examining immigration officer or do not have adequate documents to enter the United States. Thus, subsection (b)(1)'s text demonstrates that it is focused only on people arriving at a port of entry or who have recently entered the United States and not those already residing here.

Paragraph (b)(2) is similarly limited to people applying for admission when they arrive in the United States. The title explains that this paragraph addresses the "[i]nspection of other [noncitizens]," i.e., those noncitizens who are "seeking admission," but who (b)(1) does not address. *Id.* § 1225(b)(2), (b)(2)(A). By limiting (b)(2) to those "seeking admission," Congress confirmed that it did not intend to sweep into this section individuals like Petitioner, who have already entered and are now residing in the United States.

Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner. Indeed, court after court adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. See, e.g., *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL

2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); see also, e.g., *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

      ii.   Petitioner will suffer irreparable harm absent an injunction.

Petitioner's family, his attorneys, and his home are all located in the State of Idaho. Relocation of Petitioner out of the state would result in irreparable harm as it would take away his access to counsel, who would be overwhelmed with the arduous task of relocating Petitioner as he is moved without notice to his counsel and as frequently as Respondents desire, and it would frustrate the support he receives from his family. Similarly, further attempts to push through with his removal from the United States would cause him irreparable harm, as until such time as the nature of his detention is adjudicated, the process to which he is entitled is uncertain. Preventing the Respondents from seeking to influence Petitioner to abandon his rights, either in removal proceedings or in the instant case, is necessary to protect his rights, and would merely preserve the status quo.

Although here Petitioner primarily asserts statutory rather than constitutional claims, his claims raise constitutional concerns, for civil detention "violates due process outside of 'certain special and narrow nonpunitive circumstances.'" *Rodriguez v. Marin*, 909 F.3d 252, 257 (9th Cir. 2018) (citation omitted). These constitutional concerns also counsel in favor of finding that Petitioner has demonstrated irreparable harm, for he has demonstrated a strong likelihood of success on his claim that he is being held under § 1226(a) and not § 1225(b)(2). *See Baird v. Bonta*, 81 F.4th 1036, 1048 (9th Cir. 2023) (declaring that "in cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm").

His relocation or removal would also inflict substantial harm where it separates him from his family members. Such "separation from family members" is an important irreparable harm factor. *Leiva-Perez v. Holder*, 640 F.3d 962, 969–70 (9th Cir. 2011) (per curiam) (citation omitted); *see also, e.g.*, *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (per curiam) ("separated families" are a "substantial injur[y] and even irreparable harm[]"); *cf. Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("government-compelled [family] separation" causes family members "trauma" and "other burdens").

His relocation would also make it more difficult and costly to maintain representation by his chosen attorneys, both in the context of a habeas claim and his removal proceedings. Studies on representation in removal proceedings show that representation by an attorney dramatically improves case outcomes, but also that it is particularly difficult to secure representation if a person is detained. *See* Ingrid Eagly & Steven Shafter, A National Study of Access to Counsel in Immigration Court, 164 U. Penn. L. Rev. 1, 32, 48–51 (2015).

As noted above, he has two United States Citizen children, one 12 years old, which along with his continuous physical presence for over twenty years makes him eligible for non-lawful

permanent resident cancellation of removal. If he is removed, he will lose this opportunity forever because 8 U.S.C. § 1229a(b)(1) requires him to be physically present in the U.S.

      iii. The balance of hardships and public interest weigh heavily in Petitioner's favor.

The final two factors for a preliminary injunction—the balance of hardships and public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, Petitioner faces weighty hardships: loss of liberty, removal from his home, separation from family, significant stress and anxiety, and difficulty in obtaining an attorney. *See supra.* The government, by contrast, faces no hardship in preserving the status quo, apart from any costs associated with not being able to decide the place of his detention (if any), and postponing hearings they may have scheduled. There is no hardship by barring the Government from speaking to Petitioner about his removal proceedings or this action in the absence of his attorney. "[T]he balance of hardships tips decidedly in plaintiffs' favor" when "[f]aced with such a conflict between financial concerns and preventable human suffering." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

    b. Prudential exhaustion is not required.

      i. The Board's precedential in *Matter of Yajure-Hurtado* makes administrative exhaustion futile.

Prudential exhaustion of administrative remedies is not required when such exhaustion would be futile, such as is the case where the agency has predetermined the issue at hand. *McCarthy v. Madigan*, 503 U.S. 140, 147–148 (1992). Here, the board has directly and unequivocally reached the issue of whether Petitioner could obtain relief from detention, having determined that aliens who have entered the United States without inspection are categorically subject to mandatory detention. *Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Any immigration

court with which Petitioner filed a motion to redetermine bond eligibility would be bound to follow the precedent set by the BIA, who having decided the issue this year, would have no interest in suddenly reversing their interpretation of the law on appeal.

Additionally, as the issue is whether Petitioner's current mandatory detention is legal, the time spent proceeding through such administrative avenues would irreparably injure him due to his ongoing incarceration.

IV.     **CONCLUSION**

As the Respondent is likely to succeed on the merits, will suffer irreparable harm absent an injunction, and as the Government will not be burdened by preservation of the status quo, the Petitioner respectfully requests that the court issue an injunction preventing Respondents from relocating the Petitioner out of the Court's jurisdiction, from taking actions to effect his removal from the United States, and from engaging in any activities or communications with the Petitioner in an effort to secure the abandonment of his rights in this action or regarding his rights in removal proceedings, without the presence of his attorneys.

Dated: October 27, 2025

*/s/Jacob Rourk*
Jacob Rourk
Attorney for Petitioner
Ramirez-Smith Law